# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ROBERT KELVIN LINDBLOOM,

      Plaintiff,

v.                                    Case No. 8:18-cv-02642-T-02AEP

MANATEE COUNTY, DONALD
COURTNEY, TANYA SHAW, TOM
WOOTEN, KATHARINE ZAMBONI,

      Defendants.

_____/

## ORDER

This action concerns a special magistrate's enforcement hearing on local code violations. The matter comes to the Court on a motion to dismiss Plaintiff Robert Lindbloom's Second Amended Complaint, Dkt. 26, from Defendants Manatee County and Donald Courtney, Tanya Shaw, Tom Wooten, and Katharine Zamboni in their individual capacities, Dkt. 27. Plaintiff, pro se, has responded in opposition. Dkt. 29. The Court GRANTS the motion.

## BACKGROUND

Taking Plaintiff's factual allegations as true, Plaintiff has lived in the same home in Manatee County for more than 35 years. Dkt. 26 at 14. The individual Defendants work for Manatee County: Defendant Shaw is a code enforcement

officer; Defendant Wooten is a code enforcement field supervisor; Defendant Zamboni is an assistant county attorney; and Defendant Courtney is a special magistrate. *Id.*

According to Shaw's testimony at the eventual enforcement hearing, she made initial inspections of Plaintiff's residence on July 17, 2018. Dkt. 26-3 at 20. These inspections led to notices of violations (NOVs) for trash and debris (Section 2-9-105, case number 2018070212) and an unsound roof (Section 2-9-106, case number 2018070184). *Id.* The NOVs were dated July 31, 2018 and posted on the property the same day. *Id.* Reinspections were made on July 31, August 14 and 30, and September 21 of 2018. *Id.* There was "drop service," and the cases were posted on the first floor of the county administration building. *Id.*

On September 26, 2018, Magistrate Courtney held a hearing on the NOVs in which Shaw testified and presented photographic evidence of Plaintiff's noncompliance. Dkt. 26-3 at 20-26. Plaintiff testified that the photographs did not represent the then-current condition of his residence, objected to their "enhanced" nature, and questioned the allegation that the condition of the roof was structurally unsound. *Id.* at 21.

During the hearing, Plaintiff also asked for a connector cable with which to make a computer presentation. *Id.* at 21. Plaintiff was informed that he would need to provide a copy of any materials presented, so he would also need to use email or

a printer. *Id.* Plaintiff then made a request for a hearing aid but quickly turned to his case "so we don't have to come back here again." *Id.* Though he once more complained about the absence of a hearing aid, Plaintiff seemed able to communicate with and answer questions from the Magistrate. *Id.* at 21-22.

During the hearing the Magistrate issued his decision finding noncompliance and charging Plaintiff fines of $50.00 per day for each of the violations for a maximum of $20,000. *Id*; *see also* Dkt. 26 ¶ 65. Defendant Courtney and other individuals in attendance repeatedly informed Plaintiff that the fines would only assess on the compliance date on October 19, 2018. Dkt. 26-3 at 21-22. The fines started on November 17, 2018 and stopped on February 19, 2019. Dkt. 26 ¶¶ 66-67. A lien in the amount of $4,778.50 (apparently only for the trash and debris violation) was entered upon the property. Dkt. 26-2. In his original complaint, Plaintiff alleged that the Magistrate's decision is "being appealed." Dkt. 1 at 5.

In his Second Amended Complaint, Plaintiff broadly challenges the constitutionality and validity of Chapter 162, Florida Statutes and Manatee County Ordinance 15-10. Dkt. 26 ¶¶ 14-15. He also brings eighteen claims against Defendants, including claims in individual capacity. The causes of action include, against Manatee County: (1) excessive fines, (2) a due process claim under 42

U.S.C. § 1983[1] for retroactive regulation, namely Ordinance 15-10 which required homestead property owners to comply with its provisions; and (3) a due process claim for entering a lien on a homestead property.

Plaintiff brings against Defendant Shaw: (4)-(9) a series of due process claims for submitting false NOVs and altered photographs, not providing evidence to Plaintiff prior to the hearing, and not specifying additional actions necessary to bring the residence into conformity, a Fourth Amendment "privacy" claim, and a First Amendment "free speech" claim.

Plaintiff complains against Magistrate Courtney: (10) an Americans with Disabilities Act violation for failing to provide a hearing aid at the hearing; and a series of due process claims for (11) mistakenly finding the noncompliance of Plaintiff's roof; (12) not providing a connector cord to present evidence; (13) relying on evidence not provided to Plaintiff prior to the hearing and for ignoring testimony; (14) not allowing Plaintiff to question Shaw about the NOVs; (15) allowing Shaw's presentation with photographs; (16) failing to serve as an impartial tribunal as evidenced by the comment, "Here's the order in writing, sir, so you maybe can't hear but you can read this."

---

[1] Plaintiff's many due process claims are, in the alternative, brought under article I, section 9 of the Florida Constitution, though he does not specify how the analysis may differ.

Plaintiff also brings (17) a due process claim against Defendant Wooten for interrupting his questioning of Defendant Shaw. The last claim, (18), is against Defendant Zamboni for not allowing Plaintiff to present evidence that he did not provide prior to the hearing.

Plaintiff seeks a variety of relief, including injunctive relief to remove the lien, a stay of the Magistrate's decision, and punitive damages.[2] Defendants move to dismiss under Rule 10(b) of the Federal Rules of Civil Procedure for the defective form of Plaintiff's Second Amended Complaint, under Rule 8(a)(2) for lack of notice of the grounds supporting his claims, and under Rule 12(b)(6) for failure to state a claim.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted).

---

[2] Plaintiff also complains about injuries related to heart surgery weeks prior to the hearing. He alleges that the hearing might have "contributed to the subsequent collapse of the graft requiring stents as well as extremely painful drains that were placed in the pericardium." Dkt. 26 ¶¶ 195-96. It is unclear whether he seeks damages related to these injuries. Any such claim would be unavailing. The matter is also irrelevant to his procedural due process claim, especially because there is no indication that he sought a continuance or that the condition affected presentment of his defense.

Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). Courts may also consider documents attached to a motion to dismiss if they are (1) central to the plaintiff's claim; and (2) undisputed or, in other words, the "authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citations omitted).

## DISCUSSION

Rather than proceed one-by-one through Plaintiff's eighteen claims, the Court first observes that Plaintiff fails to successfully challenge the constitutionality and validity of Chapter 162, Florida Statutes and Ordinance 15-10. Secondly, the procedures for the Magistrate's hearing do not offend due process and, in any event, Plaintiff's remedy lies in state court. Additionally, Plaintiff does not raise a cognizable substantive due process or excessive fines claim as it relates to the lien. He cannot establish his remaining claims for violations of his First and Fourth Amendment rights, his privacy, and under the Americans with Disabilities Act. Lastly, qualified immunity shields the individual Defendants from suit.

I.      <u>Chapter 162, Florida Statutes and Ordinance 15-10</u>

More than once in his Complaint, Plaintiff asserts that Chapter 162, Florida Statutes, and Ordinance 15-10 are unconstitutional. Dkt. 26 ¶¶14-15, 29. His chief argument is that Chapter 162 provided the legal basis for the County to pass Ordinance 15-10, which "forc[es] citizens to abide by current regulations, no matter how expensive the repairs are and/or how long they have lived in the same house," or in other words, is a "retroactive regulation." *Id.* ¶¶ 7-9, 14.

Chapter 162 concerns county and municipal code enforcement, including authorizing enforcement boards and special magistrates. *See, e.g.*, Fla. Stat. § 162.03. As a Florida appellate court summarized, Chapter 162:

> authorizes counties and municipalities to create a code enforcement board to enforce local codes and ordinances which have no criminal penalties, where a pending or repeated violation continues to exist. Section 162.02. Enforcement is initiated by a code inspector who notifies the violator and gives him a reasonable time to correct the violation, and if the violation continues beyond the time specified for correction the code inspector must notify the board and request a hearing. Section 162.06. Under the procedures set forth in section 162.07, the board must issue findings of fact, conclusions of law and an order affording the proper relief consistent with the statute.
>
> Section 162.09 authorizes the board, upon notification by the code inspector that a previous order of the board has not been complied with by the set time or, upon finding that the same violation has been repeated by the same violator, to assess fines up to $250/day for each day that a violation continues past the date set for compliance. Once a certified copy of the order imposing a fine is filed with the public records, it constitutes a

> lien upon either the land involved or other property owned by
> the violator, and within six months the board may authorize the
> city attorney to foreclose on the lien except if it involves real
> property which is a homestead under the Florida Constitution.

*City of Gainesville Code Enf't Bd. v. Lewis*, 536 So. 2d 1148, 1150 (Fla. 1st DCA

1988). In addition to setting forth various standards for the maintenance of

property and structures, Ordinance 15-10 provides for enforcement of code

violations "as provided in Chapter 162, Florida Statutes." Manatee County, Fla.,

Ordinance 15-10, Sec. 2-37-8.

Chapter 162's constitutionality has been addressed before. For example, in

*Michael D. Jones, P.A. v. Seminole Cty.*, 670 So. 2d 95 (Fla. 5th DCA 1996), the

Florida appellate court rejected an argument that the chapter violated the Florida

Constitution by establishing a "rogue" judicial system. 670 So. 2d at 96. In

upholding the chapter, the court observed:

> The powers given by the Legislature to code enforcement
> boards by Chapter 162 do not appear to us as having crossed
> the line between "quasi-judicial" and "judicial." Such boards
> may impose fines for code violations but they cannot impose
> criminal penalties. Although boards can assert a lien against
> real or personal property, presumably section 162.09 would be
> interpreted to permit the presentment of defenses prior to
> enforcement of any lien. Further, the statute provides for the
> fundamental due process requirements of notice and a hearing,
> making of a record, and appeal, although such an appeal is
> not *de novo*.

*Id.* Additionally, the Eleventh Circuit has noted the authorization under Florida law

for special magistrates to adjudicate code violations. *E.g.*, *Bey v. City of Tampa*

*Code Enf't*, 607 F. App'x 892, 897 (11th Cir. 2015) (citing Fla. Const. art. VIII, § 2(b); Fla. Stat. § 166.021(1) & (4); Fla. Stat. §§ 162.01-162.13; City of Tampa Code § 9-1).

Alternatively, Plaintiff's argument that the statute and ordinance provide for "retroactive regulation" is unpersuasive. In support, he points to *Winston Towers 200 Ass'n, Inc. v. Saverio*, 360 So. 2d 470 (Fla. 3d DCA 1978), a short opinion that invalidated an amendment to a condominium by-law because it "was an attempt to impose a retroactive regulation." 360 So. 2d at 470-71.

There are a few problems with this. First, the court in *Winston Towers* did not specify the authority which proscribed the retroactive regulation, so it is unclear whether that authority would also implicate a statute or county ordinance. Secondly, Plaintiff provides no cases for the proposition that new or amended code provisions cannot apply to buildings that exist at the time of an ordinance's promulgation. This seems especially anomalous here because Ordinance 15-10 apparently became operative in 2015, yet the inspections and NOVs of Plaintiff's residence were not until 2018. This could suggest the defective condition was not present when Ordinance 15-10 took effect. In fact, Plaintiff does not concretely allege that the condition of his residence would have complied with code as unamended by the ordinance.

Plaintiff has not set forth a claim that is plausible on its face to challenge the constitutionality of Chapter 162, Florida Statutes or Ordinance 15-10.

II.    Procedural Due Process

Most of Plaintiff's claims are for procedural due process violations under § 1983, which requires him to prove (1) a deprivation of a constitutionally-protected liberty or property interest, (2) state action, and (3) constitutionally-inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citation omitted). Yet as Defendants point out, "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *Cotton v. Jackson*, 216 F.3d 1328, 1330-31 (11th Cir. 2000) (citations omitted). "It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." *Id.* at 1331 (citations omitted). This rule provides the State an "opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora— agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation." *Id.* (citations and internal quotation marks omitted).

The Court must "look to whether the available state procedures were adequate to correct the alleged procedural deficiencies." *Id.* (citations omitted). "If

adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." *Id.* (citations omitted). To be "adequate," the state remedial procedure "need not provide all the relief available under section 1983"; rather, it "must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due." *Id.* (citations omitted).

Here, the Magistrate's order was appealable under section 162.11, Florida Statutes. *See also* Fla. Stat. § 26.012(1) ("Circuit courts shall have jurisdiction of appeals from final administrative orders of local government code enforcement boards."). Though Plaintiff admitted the order was "being appealed," the disposition of any appeal is unclear. In any event, Plaintiff does not clearly allege in what ways such an appeal would be inadequate to remedy his claimed procedural due process violations. Though Plaintiff would not be afforded a de novo hearing, he could nonetheless obtain "appellate review of the record created before the enforcement board." Fla. Stat. § 162.11. Based on that review, the circuit court could address the lien and the Magistrate's decision, which is relief Plaintiff seeks here.[3]

---

[3] To the extent that Plaintiff could not challenge the constitutionality of Chapter 162 or Ordinance 15-10 in an administrative hearing or on appeal, *see, e.g.*, *Wilson v. Cty. of Orange*, 881 So. 2d 625, 631 (Fla. 5th DCA 2004), the Court nonetheless considered these claims above.

Though the Court need not address Plaintiff's underlying claim, it does note its skepticism. To be sure, due process "requires notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government," and, generally, "requisite notice and opportunity for a hearing at a meaningful time and in a meaningful manner." *Grayden*, 345 F.3d at 1232 (citations and internal quotation marks omitted). To determine due process requirements in a particular situation, courts generally apply the three-factor *Mathews*[4] test to assess:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 1232-33.

Other courts, in applying the *Mathews* test to Chapter 162 enforcement proceedings, have found procedural due process violations where a magistrate relied solely upon an officer's affidavit and the aggrieved party was not given an opportunity to protest or contest the factual findings. *E.g.*, *Massey v. Charlotte Cty.*, 842 So. 2d 142, 145-47 (Fla. 2d DCA 2003); *Michael D. Jones, P.A.*, 670 So. 2d at 96 ("Although [code enforcement] boards can assert a lien against real or

---

[4] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

personal property, presumably section 162.09 would be interpreted to permit the presentment of defenses prior to enforcement of any lien."). The *Massey* court noted the importance of an opportunity to present a defense because the findings there involved "moderately complex issues, including whether the alleged violation continued, how long it continued, and whether there was any reason to reduce the per diem fine imposed in light of attempts by the [aggrieved party] to comply." *Id.* at 147.

The Court agrees that Plaintiff has an interest against accrued fines—which can constitute a lien on property—but a close look at the hearing transcript reveals that Plaintiff was afforded an opportunity to be heard. Indeed, he was duly noticed of the hearing and was allowed to present after Defendant Shaw testified. *See* Fla. Stat. § 162.07(3) ("The enforcement board shall take testimony from the code inspector and alleged violator. Formal rules of evidence shall not apply, but fundamental due process shall be observed and shall govern the proceedings.").

Plaintiff requested a VGA cable for his computer but did not raise the issue again after he was informed he would need to provide a copy of any presented evidence. And though Plaintiff requested a hearing aid, he decided to "just try . . . so we don't have to come back here again." The record shows he was able to respond to questions from the Magistrate, and officials obliged him whenever he asked for confirmation of what other individuals had said. It was Plaintiff's choice

to proceed, and there is no indication he made any prior request or notice for hearing assistance.

As for his defense, Plaintiff argued that Defendant Shaw "accused me of having beer cans in my yard. I don't drink beer at all." Plaintiff later clarified that the cans were Pepsi cans without explaining why this distinction affected compliance with the code. When asked about black plastic over the roof, Plaintiff responded, "The black plastic is -- it's protecting the structure that's there now. It doesn't have any -- it does not have any -- a permanent over-structure. But that -- that is not structure. Structure is what's underneath." Dkt. 26-3 at 21-22. The Magistrate took this as an admission that there was no proper roof. There was also a dispute about the currency of the photographs presented by Shaw, but the Magistrate assured Plaintiff that "Ms. Shaw will go out there, or somebody else will go out there, and you can show them around your property, and if everything is great, it goes away."[5] *Id.* at 22.

---

[5] Plaintiff complains that "[w]hen the fine ends, how much the fine is, when the property is compliant, are determined sometime after the hearing, by a person who is NOT a magistrate." Dkt. 29 at 8. But it is worth noting that the fines eventually assessed were significantly less than as allowed by the Magistrate's order—and did not begin for nearly a month after the set compliance date. Plaintiff's suggestion that he is entitled to a special magistrate hearing each day the fines accumulate is untenable and unnecessary under both section 162.09, Florida Statutes and due process. In any event, as section 162.11 makes clear, it is the enforcement board or special magistrate's order that is appealed, not the ultimate assessment of the fines. Also unpersuasive is Plaintiff's argument that Defendant Shaw imposed additional requirements for compliance not addressed at the hearing. The Magistrate's order required Plaintiff to clear *all* trash or debris from his property. Dkt. 26-2 at 8.

Lastly, the Magistrate's comment about Plaintiff's hearing does not constitute a procedural due process violation. Though due process does afford the right to an impartial tribunal, *see Dirt, Inc. v. Mobile Cty. Comm'n*, 739 F.2d 1562, 1566 (11th Cir. 1984), the arguably insensitive comment came at the end of the hearing after the Magistrate had entered his findings. The comment does not rise to such a level that it singlehandedly impugns the impartiality of the hearing, and there are no other facts that support discrimination against Plaintiff on the basis of a hearing disability.

In sum, while the hearing appears to have been brief, the issues were simple and Plaintiff was nonetheless allowed to speak and present evidence on his behalf. *See City of Fort Lauderdale v. Scott*, 551 F. App'x 972, 975 (11th Cir. 2014) ("Here, before any lien attached, the City issued a Notice of Violation to the property owner that specified the purported violation and set a time and place for a hearing before a special master. A hearing, had it been requested, would have afforded the property owner a right to be heard in full—to contest the violation. And judicial review would have been available. This is a paradigm of due process."). In any event, the proper avenue for redress of his many claims is the State appeal process as contemplated by Chapter 162.

III.    Substantive Due Process & Excessive Fines

Plaintiff also raises a substantive due process and an excessive fines claim related to the lien on his property. Due process "protects individuals against arbitrary exercises of government power." *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty.*, 610 F.3d 588, 598 (11th Cir. 2010). To make out a substantive due process claim, Plaintiff must show he was deprived of a constitutionally protected interest through "an abuse of government power." *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1577 (11th Cir. 1989) (citation omitted). Because "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,'" the government's actions must "shock[] the conscience." *Cty of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citation omitted).

"[T]here is generally no substantive due process protection for state-created property rights." *Kentner v. City of Sanibel*, 750 F.3d 1274, 1279-80 (11th Cir. 2014). There is an exception where such rights are infringed by a "legislative" as opposed to an "executive" act. *Id.* (citations omitted). Executive acts "typically arise from the ministerial or administrative activities of the executive branch and characteristically apply to a limited number of people, often to only one," while legislative acts "generally apply to a larger segment of—if not all of—society." *Id.* (citations omitted); *see also Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d

1312, 1327 (S.D. Fla. 2014) (citing *DeKalb Stone, Inc. v. County of DeKalb, Ga.*, 106 F.3d 956, 960 (11th Cir. 1997).

The plaintiffs in *Eisenberg*, for example, challenged a city's enforcement as applied to an apartment hotel, including "eligibility for a discretionary exemption to the Fire Code given [the hotel's] historic status." *Id.* at 1327. The court held that because the decision was specific to the plaintiffs and did not affect the general population—and was therefore non-legislative—the substantive due process claim failed. *Id.*

Here, the decision to enforce the code provisions against Plaintiff was clearly specific to Plaintiff and did not affect the general population. Plaintiff cannot circumvent this fact by alleging that Ordinance 15-10 retroactively applies to all members of the public whose property existed at the time the ordinance took effect. *See, e.g.*, Dkt. 26 ¶¶ 13, 16. Additionally, Plaintiff can point to no abuse of government power or any action by the County that "shocks the conscience."

Turning to the statutory language, section 162.09, Florida Statutes provides:

> (1) An enforcement board, upon notification by the code
> inspector that an order of the enforcement board has not been
> complied with by the set time . . . may order the violator to pay
> a fine in an amount specified in this section for each day the
> violation continues past the date set by the enforcement board
> for compliance[.]
> . . .
> (3) A certified copy of an order imposing a fine . . . may be
> recorded in the public records and thereafter shall constitute a
> lien against the land on which the violation exists and upon any

> other real or personal property owned by the violator. Upon
> petition to the circuit court, such order shall be enforceable in
> the same manner as a court judgment by the sheriffs of this
> state. . . . No lien created pursuant to the provisions of this part
> may be foreclosed on real property which is a homestead under
> s. 4, Art. X of the State Constitution. The money judgment
> provisions of this section shall not apply to real property or
> personal property which is covered under s. 4(a), Art. X of the
> State Constitution.

Meanwhile, article X, section 4 of the Florida Constitution states that homestead properties are "exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon."

According to Plaintiff, "[w]hile there are many [court] opinions about the Florida Constitution's authorizing the recording of a 'super-lien' that is based on an order, not a judgment[, t]here have been *no* opinions about the last sentence in 162.09(3)." Dkt. 26 ¶¶ 20-21 (citation omitted). But the Court finds that such an issue is unnecessary to resolve the case. Indeed, courts have refused to invalidate liens on homestead properties, notwithstanding the Florida Constitution. As one state appellate court reasoned:

> [T]he instant lien was created pursuant to a code enforcement
> board *order* rather than pursuant to a "judgment, decree or
> execution" which are prohibited by the constitution. More
> importantly, . . . the prohibition of the constitutional provision
> is a prohibition against the use of process to force sale of
> homestead property and does not invalidate the debt or lien.
> Thus, the constitutional prohibition takes priority over the debt
> or lien and renders the same unenforceable. The legislature

recognized this fact in determining that an enforcement board order should not be considered a judgment except for enforcement proceedings. Accordingly, the mere recording of the order in the instant case does not constitute a cloud upon [the owner's] homestead property. However, if [the] property somehow lost its homestead status, the City would be able to enforce the order as a lien against the property.

Accordingly, the trial court correctly determined that the Florida Constitution did not invalidate the lien created in the instant case but merely rendered the same unenforceable. As such, the summary judgment granted in favor of the City is affirmed.

*Miskin v. City of Fort Lauderdale*, 661 So. 2d 415, 416 (Fla. 4th DCA 1995)

(citations omitted); *see also Demura v. Cty. of Volusia*, 618 So. 2d 754, 756-57

(Fla. 5th DCA 1993) ("It is arguable that the action which the [property owner]

should have filed (assuming, *arguendo,* that any action at all was necessary) was a

declaratory judgment action seeking a determination that the property at issue is, in

fact, homestead property at this time.").

Nor does Plaintiff state a plausible excessive fines claim. The Eleventh

Circuit has upheld much greater fines under both the U.S. and Florida

Constitutions. *E.g.*, *Moustakis v. City of Fort Lauderdale*, 338 F. App'x 820 (11th

Cir. 2009). The fine in *Moustakis*, for example, was $150 per day to total

$700,000. *Id.* at 821. The court first observed that "[t]here is a strong presumption

that the amount of a fine is not unconstitutionally excessive if it lies within the

range of fines prescribed by the legislature." *Id.* at 821 (citations omitted). After

noting that Chapter 162 did not impose a cap on the fines, the court found that the fine "was created by the [owners'] failure to bring the house into compliance with the Code each day for 14 years. Rather than being grossly disproportionate to the offense, the $700,000 fine is, literally, directly proportionate to the offense." *Id.* at 822.

The same is true here. A fine of $50 per day to total less than $5,000—which is within the bounds set by the legislature—is not excessive.

IV.    <u>Remaining Claims</u>

Plaintiff's remaining claims do not survive the motion to dismiss stage. For the First Amendment claim, Plaintiff alleges that Defendant Shaw misidentified Pepsi cans in his yard as beer cans. Dkt. 26 ¶ 121. He told her in an email that the cans "were to be used to construct an informational outdoor display." *Id.* ¶ 123. He removed the cans because of the NOV and the threat of fines. *Id.* ¶ 124.

First of all, Plaintiff provides no support for the proposition that misidentifying trash on a yard constitutes a First Amendment violation. This is true even if Defendant Shaw knew there were no beer cans on the yard. Secondly, Plaintiff cites no case finding that storing trash—or, as claimed by Plaintiff, materials for a future project—on one's yard is a constitutionally protected activity. Plaintiff further provides no details about the nature of the "informational

outdoor display," including any concrete plans for its construction.[6] *Cf. First Vagabonds Church of God v. City of Orlando, Fla.*, 638 F.3d 756, 763 (11th Cir. 2011) (en banc) (upholding neutral ordinance that promotes substantial government interest notwithstanding incidental effect on speech).

The constitutional and tort privacy claims similarly fall. The argument is again that the misidentification of the Pepsi cans in the NOV invaded Plaintiff's privacy because a "yard full of beer cans presents a more negative mental picture, than does a yard full of Pepsi cans." Dkt. 26 ¶ 117. But Plaintiff does not cite any authority that an NOV that misidentifies trash on a yard—even if knowingly—violates the Fourth Amendment or an individual's privacy interests. There was simply no intrusion as understood by the Fourth Amendment or article 1, section 23 of the Florida Constitution.

As for tort, Florida courts recognize three strains of invasion of privacy claims: "(1) appropriation—the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion—physically or electronically intruding into one's private quarters; [and] (3) public disclosure of private facts—the dissemination of truthful private information which a reasonable person would find objectionable." *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1308 (M.D. Fla.), *aff'd*, 627

---

[6] It is worth noting that there is nothing inherent in the NOV or compliance order that would prohibit Plaintiff from erecting the "informational display" on his yard once it is completed. Yet the question of whether any such display would violate the county's code—and whether Plaintiff would thereafter have a First Amendment claim—is not before the Court.

F.3d 833 (11th Cir. 2010) (quoting *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). Plaintiff is unable to establish any of the above.

Plaintiff's allegations sound in defamation, yet such a claim is also unavailable. The cause of action requires that: (1) the defendant published a false statement, (2) about the plaintiff, (3) to a third party, and (4) the falsity of the statement caused injury to the plaintiff. *In re Nofziger*, 361 B.R. 236, 245 (Bankr. M.D. Fla. 2006) (citations omitted). Malice is also an essential element. *Id.* (citation omitted). "Actual malice is established by showing that the publication was made with knowledge that it was false or with reckless disregard of whether it was false or not," though no showing is required where the statement is considered actionable *per se. Id.* (citations omitted). A "communication is actionable *per se*— that is, without a showing of special damage—if it imputes to another . . . a criminal offense amounting to a felony . . . or conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession or office[.]" *Id.* (citation omitted).

Apart from conclusory language, Plaintiff does not set forth specific allegations that the falsity of Defendant Shaw's statement caused him injury. Indeed, the statement contested here is not that Plaintiff had cans in his yard—only that they were beer cans. Similarly, Plaintiff does not dispute that the cans, or any other trash, would have been observable to any member of the public. Furthermore,

again excluding conclusory language, there are no allegations supporting the claim that Defendant Shaw knew the cans were not beer cans when she made the statement. Lastly, though the Court need not resolve the point, an absolute privilege attaches to statements made by public officials so long as publication is made "in connection with the performance of the duties and responsibilities" of their office. *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 362 (Fla. 4th DCA 1997).

The last of Plaintiff's remaining claims is under the Americans with Disabilities Act for the Magistrate's alleged refusal to provide Plaintiff with a hearing aid during the enforcement hearing. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of Plaintiff's disability. *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

This claim has numerous defects. First of all, the allegations do not make clear that Plaintiff is a qualified individual. Nor is there any indication that Plaintiff

requested an accommodation in advance of the hearing. Additionally, the transcript reveals Plaintiff was not excluded from participation in the hearing; rather, he elected to proceed "so we don't have to come back here again." He was, moreover, able to communicate with the Magistrate and present evidence on his behalf. Even more fundamentally, Title II does not require public entities to provide disabled individuals with individually prescribed devices, such as hearing aids. 28 C.F.R. § 35.135; *see also Butts v. Georgia State Patrol Div.*, No. 4:11-CV-60 CDL, 2011 WL 5597258, at *6 (M.D. Ga. Nov. 17, 2011) (denying Title II claim for failure to provide a hearing aid).

V.    Qualified Immunity

In response to Plaintiff's various § 1983 claims, the individual Defendants also invoke qualified immunity, which protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). Qualified immunity allows government officials to "carry out their discretionary duties without the fear of personal liability or harassing litigation." *Oliver v. Fiorino*, 586 F.3d 898, 904 (11th Cir. 2009) (citation omitted). The Eleventh Circuit teaches that qualified immunity should be addressed "as early in the lawsuit

as possible" because it is a defense not only from liability, but from suit. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted).

A government official "asserting this defense bears the initial burden of showing that he was acting within his discretionary authority." *Moore v. Sheriff of Seminole Cty.*, No. 17-14779, 2018 WL 4182120, at *2 (11th Cir. Aug. 30, 2018) (citation and quotation marks omitted). Then, to overcome the qualified immunity, Plaintiff has the burden to show that (1) the official's conduct violated a constitutional right, and (2) the right was clearly established at the time of the official's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson*, 555 U.S. at 236 (courts free to address inquiry in most appropriate order).

A constitutional violation can be clearly established by showing (1) a "materially similar case"; (2) pointing to a "broader clearly established principle" that controls "the novel facts of the situation"; (3) or demonstrating that the conduct involved in the case "so obviously violates 'the constitution that prior case law is unnecessary." *Terrell v. Smith*, 668 F.3d 1244, 1255-56 (11th Cir. 2012) (citations and alterations omitted). As evidenced by the above analysis, Plaintiff has failed to demonstrate a violation of a clearly established right. Qualified immunity thus shields Defendants from suit in their individual capacity.

## CONCLUSION

The Court **GRANTS** Defendants' Motion to Dismiss. Dkt. 27. This is Plaintiff's third complaint, and a fourth attempt would be futile. As such, the Court dismisses with prejudice Plaintiff's Second Amended Complaint. Dkt. 26. The Clerk is directed to terminate all pending motions and close the case.

**DONE AND ORDERED** at Tampa, Florida, on June 17, 2019.


/s/ *William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**


**COPIES FURNISHED TO:**
Counsel of Record
Pro se parties